[Civ. No. 18060. Second Dist., Div. Three. June 19, 1951.]

BETTIS RUBBER COMPANY (a Corporation), Respondent, v. ESTELLE KLEAVER, Appellant.

Stephens, Jones & La Fever, Byron O. Smith and Louis Lee Abbott for Appellant.

Brown, Berry & Rognes and Frank M. Benedict for Respondent.

VALLÉE, J.—Appeal by defendant from a judgment declaring that plaintiff is not required to pay royalties on patented devices after the expiration of the patents.

On January 15, 1940, plaintiff's predecessor in interest, called licensee, and defendant, called licensor, entered into a contract in writing whereby licensor granted to licensee the sole and exclusive license ''to manufacture, use and sell in the United States of America and all foreign countries, the invention or inventions disclosed in those certain Letters Patent Nos. 1,573,031, 1,863,740, 2,045,629, 2,163,932, 2,166,116, 2,166,937, together with any and all improvements thereon or thereto, present or future, together with the right to grant and revoke sublicenses of all rights herein granted and conveyed, for the full term of said patent and any continuation or extension thereof.'' Licensee agreed to pay licensor specified royalties on each well casing protector sold by licensee and accepted and paid for by purchasers. The licensee was given the right to relinquish all rights granted to it upon a 30-day written notice.

The contract contained this provision: ''The Licensee shall have the right to use all moulds for the production of said protectors now in its possession, the property of the Licensor, which moulds are acknowledged to be in a good condition of repair at the date hereof to be used without cost except for necessary repairs thereto which shall be at the expense of the Licensee, all such moulds upon the termination of this license agreement for any cause shall be returned in as good a condition of repair as when received to Licensor at the sole expense of Licensee.''

The rights of the licensee under the contract were duly assigned to plaintiff.

Patent 1,573,031 was declared invalid in *Oliver-Sherwood Co.* v. *Patterson-Ballagh Corp.,* 9 Cir., 95 F.2d 70, decided in 1938 prior to the making of the contract. The president of plaintiff corporation knew of that decision at the time it "came down." Patent 1,573,031 expired on February 16, 1943. Patent 1,863,740 expired on June 21, 1949, after the commencement of this action.

Plaintiff's predecessor began using moulds furnished by defendant in 1936 and had some in its possession on January 15, 1940, the date of the contract, of a value of between $3,000 and $4,000. In 1939 plaintiff's predecessor purchased additional moulds at a cost in excess of $1,000, which were paid for by defendant.

From February 16, 1943, to June 30, 1948, plaintiff paid royalties on all well casing protectors sold by it and embodying claims contained in the six patents, including 1,573,031. Since July 1, 1948, plaintiff has paid no royalties on that patent, and since June 21, 1949, has paid none on 1,863,740. It has paid them on inventions disclosed by the unexpired patents.

The court concluded and adjudged that plaintiff is not required by the contract to pay royalties upon devices embodied in claims contained in patent 1,573,031 or in patent 1,863,740 manufactured and sold after the expiration thereof, and that plaintiff is required to pay royalties only on devices embodying claims contained in such of the patents set forth in the contract as are in effect and have not expired at the time of the manufacture and sale of such devices. Defendant appeals.

Defendant contends that the contract imports a duty in plaintiff to pay royalties upon the manufacture and sale of all of the subject devices until termination of the contract, regardless of the earlier expiration of one or more of the patents licensed.

There is no conflict in the evidence introduced in aid of interpretation of the contract. We are not bound therefore by the trial court's construction of the contract but are called upon to determine its meaning as a matter of law. (*Overton* v. *Vita-Food Corp.,* 94 Cal.App.2d 367, 370 [210 P.2d 757], and cases there cited; *Export Leaf Tobacco Co.* v. *County of Los Angeles,* 89 Cal.App.2d 909, 916 [202 P.2d 622].)

"The term royalty ordinarily envisages a duty to

make and a corresponding right to receive payments proportionate to the use of patented methods or machines." *(Eastman Oil etc. Corp. v. Lane-Wells Co., 21 Cal.2d 872, 873 [136 P.2d 564].)* ▉ The law presumes that royalties are not to be paid after the expiration of a patent, but the parties may contract to the contrary. (*Sproull v. Pratt & Whitney Co., 2 Cir., 108 F. 963, 965; Pressed Steel Car Co.v. Union Pac. R. Co., 2 Cir., 270 F. 518, 525; E. R. Squibb & Sons v. Chemical Foundation, Inc., 2 Cir., 93 F.2d 475, 477; Dwight & Lloyd Sintering Co. v. American Ore Reclamation Co., (D.C.N.Y.) 44 F.Supp. 396.)* In *Sproull v. Pratt & Whitney Co., supra,* the court stated, page 965: "Parties may, of course, contract as they choose; but, in the absence of some provision by which a promise for the continuing payment of royalties upon expired patents may be fairly inferred, the presumption is that the contract is upon the ordinary terms as to the duration of royalty." In *E. R. Squibb & Sons v. Chemical Foundation, Inc., supra,* an action in which the plaintiff recovered royalties which it had paid under patent licenses after the patents had expired, the court stated, page 477: "There is a presumption that royalties are not to be paid after the expiration of a patent; if the intention is to have them continue longer, the parties should phrase their contract in language from which such intention may fairly be inferred."

▉ There is no language in this contract from which an intention may be inferred that royalties were to be paid on licensed patents after the expiration thereof. The wording of the contract is definite and certain. Royalties were to be paid "for the full term of said patent." It is manifest that royalties were to be paid only during the life of a patent and not thereafter. The duration of the license as to each patent was limited to the life of that patent. Upon the expiration of a patent the invention passed into the public domain.

▉ Defendant argues that the contract is indivisible; that the consideration promised by plaintiff was given not only for the patent licenses but also for the moulds; that so long as plaintiff uses the moulds it is required to pay royalties on all patents whether expired or not. We can see no justifiable reason for reading the mould clause as overriding the express provisions of the contract. The royalties agreed to be paid were on each and every well casing protector sold by plaintiff and were not for the use of the moulds. Plaintiff was given use of the moulds "without cost" except the cost of

necessary repair. The contract does not provide for any consideration from defendant to plaintiff other than the grant of the license. Defendant merely loaned plaintiff the use of the moulds "without cost" until the final termination of the contract.

█ The fact that plaintiff paid defendant royalties on protectors which embodied claims in patent 1,573,031 from February 16, 1943, the date it expired, until June 30, 1948, does not, as a matter of law, compel the conclusion that the contract required plaintiff to pay royalties on claims embodied in that patent after its expiration. Defendant argues that payment after February 16, 1943, was a practical construction of the contract. There was evidence that the payments were made by plaintiff in the belief that they were royalties on protectors which embodied claims covered by the unexpired patents. █ Further, it is only when the terms of the contract are uncertain or ambiguous that the court will look to the conduct of the parties in order to arrive at their intention. (*Dabney* v. *Dabney*, 9 Cal.App.2d 665, 670 [51 P.2d 108].) There is nothing uncertain or ambiguous on the face of the contract in the present case. █ Neither does the fact that plaintiff's president knew at the time the contract was made that patent 1,573,031 had been held invalid by the Circuit Court of Appeals for the Ninth Circuit compel the conclusion that the contract required plaintiff to pay royalties on claims embodied in a patent after its expiration. The license covered the United States and all foreign countries. Plaintiff was not a party to the litigation in which patent 1,573,031 was held invalid in the ninth circuit. █ The law is well established that a decision adverse to a patent in one circuit is not binding on the courts of another in litigation upon the same patent between different parties. (*Lowell* v. *Triplett*, 4 Cir., 77 F.2d 556, 561, aff. *Triplett* v. *Lowell*, 297 U.S. 638 [56 S.Ct. 645, 80 L.Ed. 949].) █ If patent 1,573,031 had not been licensed to plaintiff, it would have been subject to suit for selling the protectors in any circuit other than the ninth. Apparently plaintiff did not want to chance a suit in any other circuit.

*Automatic Radio Mfg. Co.* v. *Hazeltine Research, Inc.*, 339 U.S. 827 [70 S.Ct. 894, 94 L.Ed. 1312], and *Chicago Pneumatic Tool Co.* v. *Ziegler*, 3 Cir., 151 F.2d 784, cited by defendant, are not helpful in construing the contract in issue. In the Hazeltine case it was held that it is not *per se* a misuse of patents to require a licensee to pay royalties on its sales even

though none of the patents is used, and that the general rule is that a licensee under a patent license agreement may not challenge the validity of a licensed patent in a suit for royalties due under the contract. The Ziegler case held, that because of the peculiar facts presented under the particular language of the contracts there considered, a licensee was required to make royalty payments until the expiration of the monopoly granted by the latest patent embraced within either contract.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.